# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00060-CV

**Raul Adam Trevino, Appellant**

**v.**

**The State of Texas; Greg Abbott, Attorney General of Texas; and Michel F. Kennell, The Attorney General of Texas Public Information Coordinator's Office, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-10-000040, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Raul Adam Trevino, an incarcerated inmate, sued the State of Texas, Attorney General Greg Abbott, and state employee Michel F. Kennell (collectively, the State), alleging that the State improperly denied a request for information under the Texas Public Information Act (PIA), Tex. Gov't Code §§ 552.001-.353. In response, the State filed a combined (1) motion to dismiss the lawsuit based on section 552.028 of the PIA, which authorizes the State to deny a PIA request from an incarcerated individual, and (2) plea to the jurisdiction based on sovereign immunity. *See id.* § 552.028 (giving governmental body discretion to accept or deny request for information from incarcerated individual). The trial court granted the State's motion and plea and dismissed Trevino's claims with prejudice. *See* Tex. Civ. Prac. & Rem. Code § 14.003 (trial court may dismiss in forma pauperis inmate litigation that is frivolous or malicious). On appeal, Trevino presents nine issues in which he generally asserts that (1) PIA sections 552.0055 and

552.022 preempt section 552.028, (2) section 552.028 deprives him of his constitutional rights to due process, equal protection, and access to the courts, and (3) the trial court erroneously dismissed his claims with prejudice without allowing him an opportunity to amend his petition. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1995 Trevino pleaded guilty to possession of a prohibited weapon and three other felonies and was sentenced to 30 years in prison. *See* Tex. Penal Code § 46.05.[1] He is presently incarcerated in the Eastham Unit of the Texas Department of Criminal Justice system. Although he initially pleaded guilty, Trevino now contends that his appointed trial counsel was ineffective for failing to challenge the constitutionality of the prohibited-weapons statute; he states that he intends to file a petition for writ of habeas corpus on that basis.

To support a collateral attack of his conviction on ineffective-assistance grounds, Trevino made a request to the Attorney General's office under the PIA, seeking the identification of (1) briefs, interpretations, and policy statements that have been filed or made by the Office of the Attorney General reflecting the government's position on the constitutionality of state laws restricting the possession of weapons and (2) policy statements and interpretations made or adopted by the Attorney General's office related to Governor Rick Perry's views on the right of secession "as a

---

[1] Although the prohibited-weapons statute has been amended since Trevino's conviction, we cite the current version of the statute for convenience because the substantive changes to the statute are immaterial to the issues in this appeal.

viable option in the face of continued federal intrusion."[2]  On behalf of the Attorney General's Public Information Coordinator's Office, Kennell issued a written response declining Trevino's request for information based on section 552.028 of the PIA, which provides that "[a] governmental body is not required to accept or comply with a request for information [under the PIA] from:  (1) an individual who is imprisoned or confined in a correctional facility; . . . ."  Tex. Gov't Code § 552.028.

In response, Trevino reasserted his request for information and argued that he was entitled to receive information concerning the existence of the requested documents based on (1) PIA section 552.0055, which states that "[a] subpoena duces tecum or a request for discovery that is issued in compliance with a statute or a rule of civil or criminal procedure is not considered to be a request for information under [the PIA]," and (2) PIA section 552.022, which lists examples of categories of

---

[2] Specifically, Trevino asked the State to disclose the existence of documents in the following categories:

1.     briefs filed in the public courts "arguing for the Individual Right of 'the people' to keep and bear arms in further[-ance] of the Natural Law of Self-Preservation";
2.     policy statements or interpretations adopted or issued by the Attorney General's Office concerning the right to bear arms, self-preservation, the extent of natural law, the government's police powers in relation to the foregoing, and fundamental rights;
3.     policy statements or interpretations on the original intent of Texas Constitution Article 1, §23;
4.     the existence of information pursuant to Texas Government Code section 552.103 "concerning information garnered from third parties" bearing on the right to bear arms, self-preservation, the extent of natural law, the government's police powers in relation to the foregoing, and fundamental rights;
5.     "any policy statement or interpretation that has been adopted or issued by the Attorney General's Office concerning Texas's 'right of secession' as espoused by Governor Rick Perry [in 2009], as a viable option in the face of continued federal intrusion"; and
6.     "any other information pursuant to the previous sections, subsections, and Attorney General Opinions, etc[.]"

3

information that "are public information and not excepted from required disclosure unless made confidential under [the PIA] or other law." *Id.* §§ 552.0055, .022. Trevino stated that he "was merely requesting about [sic] the 'existence' of documents and information of the nature [he] had listed[;] not for actual copies of the documents and information themselves." Kennell once again issued a letter declining Trevino's request based on section 552.028.

Shortly thereafter, Trevino, proceeding pro se and in forma pauperis, filed suit against the State, asserting that the requested information was essential to allow him to successfully prosecute a writ of habeas corpus alleging ineffective assistance of counsel and that the State's improper refusal to release the requested information entitled him to injunctive and monetary relief under the Federal Tort Claims Act, 42 U.S.C. § 1983, and the PIA. Among other remedies, Trevino requested that the trial court (1) declare section 552.028 unconstitutional, (2) order the State to produce the requested documents at its own expense or by debiting Trevino's prison trust account as funds are made available to him, (3) impose a continuing obligation on the State to produce responsive documents, and (4) award him $25,000 in monetary, punitive, compensatory, and other damages.

The State filed a motion to dismiss Trevino's lawsuit as frivolous on the ground that section 552.028 authorizes the State to decline Trevino's request and the statute is not unconstitutional. *See* Tex. Civ. Prac. & Rem. Code § 14.003 (authorizing court to dismiss claim upon finding that "the claim is frivolous or malicious" and providing factors court may consider in making that determination); *see generally id.* § 14.001-.014 (imposing restrictions on indigent prisoner litigation). The State also filed a plea to the jurisdiction based on sovereign immunity from Trevino's claim for money damages and his claim for relief under section 1983. The trial court granted the

4

motion to dismiss and the plea to the jurisdiction and dismissed Trevino's claims with prejudice. Trevino subsequently filed (1) an amended petition to address jurisdictional deficiencies asserted in the State's plea to the jurisdiction and (2) a motion for new trial. The motion for new trial was overruled by operation of law, and this appeal followed.

On appeal, Trevino asserts nine appellate issues, which can be summarized as arguing that: (1) PIA sections 552.0055 and 552.022 render section 552.028 inapplicable, (2) section 552.028 is unconstitutional because it deprives him of information that is essential to support his ineffective-assistance-of-counsel claim, and (3) the trial court erroneously dismissed his claims with prejudice without allowing him an opportunity to amend his petition.

## DISCUSSION

As a threshold matter, the State asserts that we are without jurisdiction to consider Trevino's appeal because his notice of appeal was not timely filed. *See* Tex. R. App. P. 25(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). A notice of appeal must be filed within thirty days after the judgment is signed; however, the deadline may be extended to 90 days after the judgment is signed if one of the deadline-extending circumstances listed in Texas Rule of Appellate Procedure 26.1(a) has occurred, including the timely filing of a motion for new trial. *See* Tex. R. App. P. 26.1(a) (allowing 90 days for filing notice of appeal if any party timely files motion for new trial, motion to modify judgment, motion to reinstate under Texas Rule of Civil Procedure 165(a), or request for findings of fact and conclusions of law). The judgment dismissing Trevino's claims was signed on October 20, 2011. Trevino's notice of appeal was not filed until January 13, 2012. The issue

5

presented is whether Trevino's intervening motion for new trial was timely filed and, thus, effective to extend the deadline to perfect his appeal. In his motion for new trial, Trevino certified that he placed the motion in the prison mailbox system on November 18, 2011, which was within the time period for timely filing a motion for new trial. However, the motion for new trial was not file-stamped by the district clerk's office until December 28, 2011, which is not timely.

The Texas Supreme Court has adopted the "prisoner mailbox rule" for court filings by pro se inmates. *Enriquez v. Livingston*, 400 S.W.3d 610, 621 (Tex. App.—Austin 2013, pet. filed) (citing *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004), and *Ramos v. Richardson*, 228 S.W.3d 671, 673-74 (Tex. 2007)). Under that rule, pleadings filed with the clerk of the court are deemed filed "at the time the prison authorities duly receive the document to be mailed." *Warner*, 135 S.W.3d at 684. To invoke the mailbox rule, an inmate has the burden of providing "some measure of proof" regarding the date that he turned his pleading over to prison authorities for mailing. *Ramos*, 228 S.W.3d at 673. A recitation in a certificate of service regarding the date the inmate gave the documents to prison authorities to mail has been held sufficient to satisfy this burden. *See id.* ("Ramos did everything necessary to comply with the rules by placing the notices of appeal in the outgoing prison mailbox."); *see also Enriquez*, 400 S.W.3d at 621-22 . "[O]nce an inmate has provided 'some measure of proof' that he placed his [pleading] in the hands of prison authorities on or before the date it was due to be filed, the burden shifts to the State to offer rebuttal evidence." *Enriquez*, 400 S.W.3d at 622.

In the present case, Trevino's certification that he placed a copy of the motion for new trial in the prison mailing system on November 18, 2011, for mailing to the Travis County District

Clerk is sufficient to invoke the prisoner mailbox rule and shift the burden to the State to submit rebuttal evidence. *See id.* at 621-22 (holding that State's argument that trial court could have disbelieved Enriquez based on fact that motion took longer than other filings to reach trial court without explanation for delay was insufficient to rebut measure of proof that prisoner provided). Although we specifically offered the State an opportunity to supplement the appellate record with rebuttal evidence,[3] the State declined to produce any such evidence. *See id.* at 622-23 (observing that prisoner's assertion of delivery to prison authorities can be readily disputed by prison records, such as prison mail logs). Accordingly, we conclude that Trevino's motion for new trial and notice of appeal were timely filed and that we have jurisdiction over the merits of Trevino's appeal, to which we now turn.

As an inmate proceeding in forma pauperis, Trevino's suit is governed by Chapter 14 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 14.001–.014; *see also Thompson v. Henderson*, 927 S.W.2d 323, 324 (Tex. App.—Houston [1st Dist.] 1996, no writ). Under this chapter, a trial court has broad discretion to dismiss an inmate's suit if it finds that the claim is frivolous or malicious. *See Martinez v. Thaler*, 931 S.W.2d 45, 46 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *see also Lentworth v. Trahan*, 981 S.W.2d 720, 722 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 14.003(a)(2)). In

---

[3] This Court's letter to the parties stated:

[T]he parties are requested to submit to this Court evidence, in the form of affidavits and relevant documents, if any, bearing on the timeliness of appellant Raul Adam Trevino's motion for new trial and notice of appeal. In complying with this request, the parties are directed to the Court's recent opinion in Enriquez v. Livingston . . . , in which we recognized that the prisoner mailbox rule could be rebutted with prison mail records or logs.

determining whether a claim is frivolous or malicious, the trial court may consider whether: (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts. Tex. Civ. Prac. & Rem. Code § 14.003(b). A trial court's dismissal of an action as frivolous or malicious is subject to review under an abuse-of-discretion standard. *See Martinez*, 931 S.W.2d at 46. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without regard to any guiding rules or principles. *Ford Motor Co. v. Chacon*, 370 S.W.3d 359, 362 (Tex. 2012) ("[A]buse of discretion . . . occurs when the trial court rules (1) arbitrarily, unreasonably, or without regard to guiding principles, or (2) without supporting evidence.").

On appeal, Trevino does not dispute that he is incarcerated or that section 552.028 authorizes the State to decline his request for information. *See* Tex. Gov't Code § 552.028 (giving governmental body discretion to accept or deny request for information from incarcerated individual). He contends, however, that section 552.028 is inapplicable because section 552.022 and 552.0055 of the PIA independently require the State to respond to his request for information. We disagree.

First, section 552.022 of the PIA generally lists examples of categories of public information that are available under the Act unless otherwise exempted from disclosure. *See id*. § 552.022 ("Without limiting the amount or kind of information that is public information under this chapter, the following categories of information are public information and not excepted from required disclosure unless made confidential under this chapter or other law . . . ."). In contrast, section 552.028 specifically limits the rights of certain requestors to obtain public information as

8

defined in section 552.022. Thus, section 552.022 is a general provision concerning the availability of public information while section 552.028 is a specific provision limiting the disclosure requirement. A special provision "prevails as an exception to [a] general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." *Id.* § 311.026 ("The special or local provision prevails as an exception to the general provision."). Section 552.028 is a later-enacted special provision. Moreover, there is no manifest legislative intent that section 552.022 should prevail over section 552.028's express terms. Accordingly, section 552.022 does not render section 552.028 inapplicable.

Second, section 552.0055 of the Act exempts from the PIA document requests made during pending litigation and thus might trump section 552.028 when it is applicable. *See id.* § 552.0055 ("A subpoena duces tecum or request for discovery that is issued in compliance with a statute or rule of civil procedure is not considered to be a request for information under this chapter."). However, it is not applicable here. As established by Trevino's certificate of prior litigation, at the time Trevino made his PIA request, there was no pending litigation against the State and thus there could not have been a subpoena duces tecum or pending discovery request issued in compliance with a statute or rule of civil procedure. Accordingly, section 552.0055 does not apply or preempt section 552.028 in this case. Moreover, Trevino is not independently authorized to issue a subpoena. *See* Tex. R. Civ. P. 176.4 (listing persons who may issue subpoenas). We therefore overrule Trevino's sixth and seventh appellate issues.

Trevino next asserts that section 552.028 violates his constitutional rights to due process, equal protection, and access to the courts because it deprives him of access to information

9

that is essential to support a writ of habeas corpus alleging that he was deprived of the effective assistance of counsel in his criminal trial because appointed counsel failed to challenge the prohibited-weapons statute under which he was convicted. All of these constitutional challenges to section 552.028 have been previously addressed and rejected in *Nabelek v. Bradford*, 228 S.W.3d 715 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

In *Nabelek*, a convicted felon made a request under the PIA for portions of a file related to the convictions for which he was then incarcerated. *Id.* at 717. He asserted that he needed the information to support a petition for writ of habeas corpus and application for clemency, and he offered to pay for production of the documents. *Id.* at 717-18. After the City of Houston denied his request for disclosure based on section 552.028, the inmate sued to establish that he had a constitutional right to information pertaining to his criminal convictions. *Id.* at 717. The inmate asserted that denial of his request pursuant to section 552.028 violated a number of constitutional rights, including due process, equal protection, the Sixth Amendment right to self-representation, and the First Amendment right of free speech. *Id.* With regard to each of these challenges, the appellate court upheld the constitutionality of section 552.028. *Id.* at 718-19.

Pertinent to the issues in this case, the court in *Nabelek* held that the inmate had "no constitutionally protected right to that information as a matter of due process," even considering his offer to pay the cost of producing responsive documents. *Id.* at 718 (citing *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), in which the United States Supreme Court held that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary

course"). The court noted that declination of the request did not hinder the inmate's ability to file a writ of habeas corpus, and as a result, there was no due-process violation. *Id*. at 719.

The court also held that the inmate's equal-protection challenge to section 552.028 was meritless because prisoners are not a suspect class and the statute furthered legitimate state interests in avoiding "unnecessary use of state and other governmental agencies' employee resources." *Id*. at 719. Even though the inmate offered to pay for production of the records, the court found that factor immaterial to the pertinent issue, which was whether the legislature had a legitimate state interest in enacting the law. *Id*. In holding that the statute passed constitutional muster, the court observed that responding to requests from inmate litigants requires the time and attention of public employees and that "[i]t requires little effort of thought to understand the strain on public resources were agencies required to comply fully with every prisoner's request for information." *Id*.

Other courts have likewise concluded that section 552.028 withstands scrutiny in the face of constitutional challenges. In *Cox v. State*, a convicted felon requested copies of written and oral transcripts pertaining to his conviction, including grand jury deliberations, the indictment, final sentencing in the plea bargain, and various motions. 202 S.W.3d 454, 454-55 (Tex. App.—Amarillo 2006, no pet.). The court held that an inmate is not entitled to free records to collaterally attack his conviction by alleging that the state was not following the plea bargain, and the court was authorized to deny his request pursuant to section 552.028. *Id*. at 455. Furthermore, in *Escobar v. State*, a prisoner sought copies of trial records and transcripts pertaining to his case for use in preparing an application for post-conviction habeas corpus relief. 880 S.W.2d 782, 783 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Escobar claimed he was entitled to the records pursuant to *United States*

*v. MacCollom*, 426 U.S. 317 (1976), but he did not assert any specific violation of his rights. *Escobar*, 880 S.W.2d at 783-84. The court noted that an indigent criminal defendant is not entitled, either as a matter of equal protection or of due process, to a free transcription of prior proceedings for use in seeking post-conviction habeas relief. *Id.* at 783.

Here, Trevino relies heavily on *MacCollom* to establish his constitutional right to the requested documents. 426 U.S. at 320-21, 323-27. However, *MacCollom* does not support Trevino's claim. In that case, the United States Supreme Court considered the constitutionality of 28 U.S.C. § 753(f), which limited the circumstances in which a habeas petitioner can obtain a free trial transcript to circumstances in which a judge has certified that the petitioner's claims are not frivolous and that the transcript is necessary to support the claims. *Id*. at 320-21. The appellee, who wished to challenge his conviction in a collateral proceeding, argued that the statute violated his due-process and equal-protection rights under the U.S. Constitution. *Id.* at 323. The Court held that a prisoner does not have a constitutional right to a free copy of his criminal trial transcript to assist in the preparation of a post-conviction motion for relief. *Id.* at 325-26. Specifically, the Court held that (1) the right to a free trial transcript was not a necessary concomitant to a writ of habeas corpus, (2) the conditions established by section 753(f) were not arbitrary and unreasonable, and (3) the Equal Protection Clause was not violated because the petitioner had an adequate opportunity to attack his conviction via direct appeal (had he chosen to pursue one) and the transcript remained available at no cost on the conditions previously noted. *See id.* at 321-28 ("The Due Process Clause of the Fifth Amendment does not establish any right to an appeal, and certainly does not establish any right to collaterally attack a final judgment of conviction." (Internal citation omitted.)). The Court observed:

> [T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.

*Id*. at 328; *cf. Escobar*, 880 S.W.2d at 784 ("The state likewise has no constitutional duty to provide without charge any other unspecified 'trial records' . . . except under the same conditions and upon the same showing that applies to obtaining a free transcription of the court reporter's notes of a trial or other oral hearing.").

Trevino attempts to distinguish the foregoing cases from his individual circumstances on the basis of necessity and willingness to pay for the documents. To support his claim of necessity, Trevino cites several federal cases for the proposition that he must have specific facts to support a habeas claim concerning a factual dispute. *See United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004) (stating that habeas petitioner may invoke discovery process in federal habeas court, but "[c]onclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact"); *see also Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (stating that petitioner can show good cause for discovery where specific allegations show reason to believe that petitioner may be entitled to relief). Even if the constitutional analyses in *Nabelek* and *MacCollom* would be different upon a claim or showing of necessity and financial means, those circumstances are not applicable to Trevino's case. First, the information Trevino seeks is not essential to his ineffective-assistance claim because the constitutionality of a state criminal statute is a question of law. *See Goyzueta v. State*, 266 S.W.3d 126, 130 (Tex. App.—Fort Worth 2008, no pet.) (addressing

13

constitutionality of section 71.021 of Texas Penal Code as question of law); *see also Owens v. State*, 19 S.W.3d 480, 483 (Tex. App.—Amarillo 2000, no pet.) ("Questions concerning the constitutionality and interpretation of a criminal statute are questions of law that we review *de novo*."). Thus, the State's position or opinion regarding the constitutionality of the prohibited-weapons statute or the right to bear arms is not germane to Trevino's claim that trial counsel was ineffective for not challenging the statute's constitutionality.

Second, Trevino lacks the financial means to pay for production of the documents. He is proceeding in forma pauperis in this litigation, and the record reflects that he has no present ability to pay for the documents. Instead, he claims the ability to pay based only on a contingent future expectation of gratuitous monetary contributions to his inmate trust account from a family member. Even if the information Trevino provided regarding his financial circumstances were inaccurate, the trial court would still have had the authority under Chapter 14 to dismiss Trevino's claim based on a false or fraudulent allegation of poverty. *See* Tex. Civ. Prac. & Rem. Code § 14.003(a)(1). Either way, the trial court would not have erred in dismissing Trevino's claims. We therefore overrule Trevino's second, third, and fourth appellate issues.

Finally, Trevino asserts that the trial court should have allowed him to amend his petition before dismissing his claims with prejudice. "[D]ismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). In the present case, we conclude that Trevino's error could not be remedied by amendment. Section 552.028 clearly applies to Trevino's request for information under the PIA and is not unconstitutional on its face or as applied to his circumstances. Accordingly,

14

Trevino's claim that the State was required to produce responsive documents has no arguable basis in law and has no realistic chance of ultimate success. *See* Tex. Civ. Prac. & Rem. Code § 14.003. Moreover, although Trevino was not provided an opportunity to amend his petition, he nonetheless filed an amended petition. However, neither Trevino's amended petition nor his appellate brief asserts any additional facts or legal theories that would support his claim that the State was required to honor his PIA request. Thus, it is apparent that giving Trevino another opportunity to amend would not have resulted in a different outcome. We therefore conclude that the trial court did not abuse its discretion in dismissing Trevino's claims with prejudice. We overrule appellate issues one, five, eight, and nine.

## CONCLUSION

Having overruled all nine of Trevino's issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   August 7, 2013

15